## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____
                             :

MARYWOOD UNIVERSITY,         :

              Plaintiff,      :

            v.            :     No.

SYNERGI PARTNERS, INC.,     :

            Defendant.    :
_____:

## COMPLAINT

Plaintiff Marywood University ("Marywood") brings this complaint against defendant Synergi Partners, Inc. ("Synergi") and, in support thereof, avers as follows:

## Introduction

1.    Defendant Synergi purported to conduct a complete accounting and legal analysis and determined that Marywood was somehow entitled to a $6 million tax credit.

2.    Upon review by Marywood's licensed accountants, it was determined that Marywood was not entitled to the $6 million tax credit purportedly identified and quantified by Synergi.

3.     Yet, Synergi seeks payment of a so-called "contingency fee" of over $900,000.00, based on Synergi obtaining for Marywood a useless and purported $6 million tax credit that Marywood can neither file for nor claim without risk of audit, civil (and perhaps criminal) penalties and/or concomitant reputational harm.

4.     Marywood brings claims against Synergi for fraudulent inducement and declaratory judgment.

## Parties

5.     Plaintiff Marywood is a private institution of higher learning sponsored by the Congregation of the Sisters, Servants of the Immaculate Heart of Mary, and roots itself in the Catholic intellectual tradition, the principle of justice and the belief that education empowers people.

6.     Marywood is a Pennsylvania non-profit corporation with an address of 2300 Adams Avenue, Scranton, Pennsylvania 18509.

7.     Synergi holds itself out to the public as being operated by tax credit industry veterans; claims to be the largest privately owned tax credit and incentive consulting company in the United States; and states that it specializes in identifying and processing federal and state tax credits for employers across the United States, including Puerto Rico.[1]

---

[1]     As found on Synergi's website, on or about June 17, 2022, located at https://www.synergipartners.com/about-us/.

8.     Defendant Synergi is a South Carolina corporation with offices located at 151 West Evans Street, Florence, South Carolina 29501.

## Jurisdiction and Venue

9.     This Court has jurisdiction over this civil matter pursuant to 28 U.S.C. § 1331(a)(1), because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district.

11.     Jurisdiction and venue are additionally proper in this Court pursuant to 42 Pa.C.S § 5222, Pennsylvania's "long arm statute."

12.     Finally, it is believed, and therefore averred, that Synergi regularly conducts business in Pennsylvania.

## Background

13.     On March 9, 2021, Marywood and Synergi entered into a so-called Client Services Agreement (the "Purported Agreement").  See Exhibit A.

14.     Pursuant to the Purported Agreement, Synergi was to perform certain tax and accounting services for Marywood, namely:

A. Identify and determine eligibility for an Employee Retention Tax Credit ("ERTC") as provided for in the Coronavirus Aid Relief And Economic Stimulus Act (the "CARES Act").

B. Gather and analyze payroll and other accounting and financial data from Marywood as necessary to determine eligibility for and calculate any ERTC that may apply.

C. Calculate the amount of ERTC that Marywood was able to apply for.

D. Prepare for and deliver to Marywood a customized and so-called "Tax Credit Package" including an eligibility analysis for the ERTC, supporting schedules and a calculation of the benefits that Marywood was entitled to under the law.

E. Provide Marywood internal and external audit support, including in the case of any Internal Revenue Service ("IRS") audit.

See Exhibit A at "Scope of Engagement; Services."

15. In exchange for the tax and accounting services it was to provide for Marywood, Synergi purported to charge Marywood a fifteen percent (15%) so-called "contingency fee" based on the amount of ERTC that Synergy calculated for Marywood. See Exhibit A at "Fees."

4

16.    It was represented by Synergy and understood by Marywood, and indeed, understood by any reasonable person, that the "contingency fee" would only be payable if Marywood actually qualified for, and could avail itself of, the ERTC.

17.    While one would reasonably expect payment to be contingent upon whether or not Marywood could actually avail itself of the ERTC calculated by Synergi, as Marywood understood was the case, the Purported Agreement provides "Client's obligation to pay the Fee is not contingent upon Client's ultimate filing an/or use of the Credits."  See Exhibit A at "Fees."

18.    It is Synergi's position that whatever the amount of the ERTC that Synergi comes up with, and whether or not that amount is right or wrong—indeed, whether or not Marywood is even eligible to claim the ERTC in the first place—Marywood still must pay to Synergi a nearly $1 million "contingency fee."

19.    It is, apparently, Synergi's further position that Marywood must pay the "contingency fee" to Synergi, even if Marywood does not qualify for the ERTC, and then run the risk of:  (i) filing an erroneous or false claim with the IRS; (ii) being audited by the IRS; (iii) having its ERTC claim denied, in whole or in part; or (iv) being subject to civil or criminal penalty, and concomitant reputational harm.  See Ex. A at "Refunds/Audit Notices." And, if Marywood is deemed by the IRS not eligible for the ERTC (as has been determined by Marywood's outside auditor and

accountants), have Marywood seek reimbursement of the "contingency fee" from Synergi.

20.    Although the entire gravamen of the Purported Agreement is clearly for Synergi to provide tax and accounting advice and services to clients such as Marywood, Synergi disingenuously places the following provision at the end of the Purported Agreement:

> MISCELLANEOUS.  Synergi DOES NOT provide tax advice, tax filings or CPA services.  Synergi is not a tax preparer or accountant and therefore explicitly disclaims any and all responsibility for preparation of a Client's federal or state tax returns.  Synergi will not render or be required to render any service that could be interpreted as the practice of accounting.

<u>See</u> Exhibit A at "Miscellaneous."

21.    Regardless of this self-serving provision, all of the services allegedly provided by Synergi under the Purported Agreement entail the practice of accounting and/or tax accounting.

22.    Indeed, if Synergi is not providing any accounting or tax accounting related services, it is providing absolutely no services under the Purported Agreement at all—in other words, the Purported Agreement lacks consideration.

23.    Prior to the date of the Purported Agreement, on March 4, 2021, Synergi provided to Marywood a document entitled "CARES Act Employee Retention Credit."  <u>See</u> Exhibit B.

24.     This appears to be a form document; among other thing, it is addressed to "Dear _____," and equates Marywood (a university) with Synergi's "other hospital system clients" (Marywood is neither a hospital nor affiliated with any hospital).  See Exhibit B.

25.     As in the Purported Agreement, this document describes numerous accounting and tax accounting services that Synergi purports to provide its clients, and also discusses that its team consists of "lawyers"; in the document, it appears that Synergi provides legal analysis of the CARES Act.  See Exhibit B.

26.     Synergi provided this document to Marywood to induce it to enter into the Purported Agreement.

27.     It is believed, and therefore averred, that Synergi is not licensed to practice accounting in the Commonwealth of Pennsylvania; nor are any of its employees licensed to practice law in the Commonwealth of Pennsylvania.

28.     On or about July 15, 2021, Synergi sent to Marywood an invoice purporting to indicate that Marywood was entitled to an ERTC in the amount of $6,012,944.15 (the "Alleged Credit").  See Exhibit C.

29.     Synergi's invoice purported to charge Marywood a "contingency fee" in the amount of $901,941.62 (the "Alleged Contingency Fee"), supposedly owed by Marywood to Synergy in two equal installments of $450,970.81 each.  See Exhibit C.

30.     Because of, among other things, the sheer size of the Alleged Credit and questions as to how Synergi determined Marywood's eligibility for the Alleged Credit and the amount, Marywood turned the matter over to its outside accounting and auditing firm, CliftonLarsonAllen LLP, for review and verification.

31.     Marywood's outside accounting and auditing firm determined that Marywood was not eligible for the Alleged Credit.

32.     On May 27, 2022, Marywood informed Synergi of this and other issues pertaining to Synergi's "work product" in connection with the Alleged Credit.  See Exhibit D.

33.     Synergi "responded" with a threat to sue Marywood should payment of the Alleged Contingency Fee not be made in full.

34.     The "services" provided to Marywood by Synergi were a sham.

35.     Synergi further appears to be providing legal advice and accounting services—including tax accounting services—to Pennsylvania clients (such as Marywood) without being licensed to do so.

36.     Regardless, the services provided are—to say the least—substandard, and appear to be designed to allow Synergi to charge an excessive and/or unearned "contingency fee" based on alleged tax credits that a client is not eligible for.

37.     Indeed, actual licensed Pennsylvania accountants, having access to the same accounting and financial information from Marywood's files as did Synergi, readily concluded that Marywood was not entitled to the Alleged Credit.

38.     Synergi interprets the Purported Agreement as requiring that Marywood <u>either</u> file for the Alleged Credit that it is not entitled to in the first place <u>or</u> that Marywood should automatically pay the Alleged Contingency Fee immediately and without question.

39.     Synergi's interpretation is untenable, unreasonable and smacks of bad faith, if not illegality.

40.     Indeed, it is Marywood's position that the Purported Agreement was procured by fraud, and is otherwise *void ab initio* and/or unenforceable.

41.     Finally, it should be noted that Synergi further represented as follows:

> <u>Knowledge</u>.  Synergi takes pride in being "first to know" about new tax legislation, keeping our clients abreast of new tax legislation that could potentially benefit them. ***Our team works very closely with DLA Piper & legislators in DC to understand how to interpret and apply this legislation, while keeping our clients in full compliance***.

<u>See</u> Exhibit B (emphasis added).

42.     Synergi thus purports to bolster its reputation and knowledge by touting its affiliation with one of the world's largest law firms ("DLA Piper") and its "very

close work" with members of the United States Congress ("legislators in DC") to obtain clients such as Marywood.  See Exhibit B.

43.     Whether this is to show Synergi's ability to "influence pedal" on behalf of its clients or is an outright misrepresentation remains to be seen.

## Count I—Fraudulent Inducement

44.     Marywood incorporates herein by reference the foregoing paragraphs.

45.     Marywood was fraudulently induced by Synergi to enter into the Purported Agreement.

46.     Synergi represented to Marywood, including in written promotional materials provided to Marywood, among other things, that it had a staff of lawyers and accountants eminently familiar with the requirements for Marywood to obtain the ERTC; that Synergi's work was back-stopped by one of the largest law firms in the world; that Synergi worked very closely with members of Congress as to tax credit issues; that Synergi would completely examine Marywood's books and records, and such other accounting and financial materials as reasonably necessary, to determine whether Marywood would be eligible for the ERTC; and that Synergy would provide Marywood with a "Tax Credit Package" sufficient to support the claim for an ERTC in excess of $6 million.

47.     Synergi additionally deceptively represented that it was capable of—and in fact was—providing accounting and tax accounting services, then attempted to later disclaim that it was providing such services in the Purported Agreement.

48.     But if accounting and tax accounting services are stripped from Synergi's undertakings in connection with its engagement with Marywood, there would be nothing left that Synergi actually provided to Marywood.  In other words, Synergi purports to charge Marywood over $900,000.00 for nothing.

49.     These representations were material to the transaction at hand.  Indeed, these representations formed the very basis for the parties' relationship in the first place.

50.     These representations were made falsely by Synergi, with knowledge of their falsity or recklessness as to whether they were true or false.

51.     These representations were made by Synergi with the intent of misleading Marywood into relying upon them.

52.     Indeed, the last two elements are evidenced by, among other things, the provisions of the Purported Agreement which Synergi interprets as:  (i) allowing it to perform no, illegal or shoddy services for its clients; (ii) allowing it to basically guess at the tax credit to which its client is supposedly entitled to, with little or no demonstrable analysis done to any actual industry standard; and (iii) then allowing it to charge the client a percentage of whatever credit Synergi has selected,

irrespective of whether that client is eligible for a credit in the amount Synergi unilaterally determined.

53.     In other words, the entire scheme appears set up to allow Synergi to provide its clients inflated—if not bogus—tax credit calculations so as to allow Synergy to collect a fifteen percent (15%) commission on the inflated (or bogus) amount.

54.     Marywood justifiably relied on Synergi's representations.

55.     Marywood only found out afterwards that these representations were false, and that it had been unfairly taken advantage of by Synergi—and, in particular, duped by Synergi into signing a one-sided contract.

56.     Marywood was damaged as a direct and proximate result of Synergi's foregoing wrongful actions and fraudulent representations.

57.     The Purported Agreement should be voided.

58.     Marywood should be relieved of any obligation to pay the Alleged Contingency Fee in the principal amount of $901,941.62 to Synergi.

WHEREFORE, Marywood respectfully requests judgement on Count I of its Complaint, in an amount in excess of $75,000.00 exclusive of interest and costs, along with punitive damages and such other relief as this Court deems just and appropriate.

## Count II—Declaratory Judgment

59.    Marywood incorporates herein by reference the foregoing paragraphs.

60.    There is an actual and justiciable controversy between Marywood, on the one hand, and Synergi, on the other hand, pertaining to: (i) the Purported Agreement; (ii) the Alleged Contingency Fee; (iii) the Alleged Credit; and (iv) the parties' rights and obligations pertaining to the Purported Agreement, the Alleged Contingency Fee and the Alleged Credit.

61.    The controversies between the parties are ripe for adjudication, and are not hypothetical or moot.

62.    All parties necessary for adjudication of the controversies are before this Court.

63.    This case is particularly apt for issuance of an appropriate declaratory judgment.

64.    Marywood should not be put in the position of <u>either</u> falsely claiming entitlement to the $6 million Alleged Credit that its licensed accountants have determined that Marywood is not entitled to, <u>or</u> risking forfeiture of some $901,941.62 to Synergi if Marywood follows its licensed accountants' advice and does not pursue the Alleged Credit.

WHEREFORE, Marywood respectfully requests that an appropriate declaratory judgment be issued to the effect that: (i) the Purported Agreement is *void ab initio* for, among other things, being an illegal contract, being violative of public policy, being an illusory promise, as lacking valid consideration or as being procured by fraudulent means; (ii) Marywood be relieved of any purported obligation to either pursue the Alleged Credit and/or pay the Alleged Contingency Fee in the amount of $901,941.62 (or any other amount) to Synergi; and (iii) Marywood be awarded other declaratory and equitable relief as deemed just or appropriate by this Court.

KLEHR HARRISON
HARVYE BRANZBURG LLP

Dated: June 22, 2022

//s//  William J. Clements (Pa. 86348)
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Ph   (215) 569-2700
Fax  (215) 568-6603
wclements@klehr.com

*Attorneys for Plaintiff,*
*Marywood University*